848 F.2d 1523
 26 Fed. R. Evid. Serv. 774
 UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,
v.
Limmie Lee KILLOUGH, et al., Defendants,
William Donald Fountain, Ronald Caswell Kirkland, Luther
Manuel Henry, Individually and d/b/a L.B. Henry Tree
Surgery, Inc.; Louis Rodney Henry, individually and d/b/a
LRH Mobile Contractors, Inc.; James Harrell, Individually
and d/b/a LRH Mobile Contractors, Inc.; John R. Peters,
Individually and d/b/a J & J Trim Shop,
Defendants-Appellants, Cross-Appellees.
 No. 86-7914.
 United States Court of Appeals,
Eleventh Circuit.
 July 12, 1988.
 
 James Jerry Wood, Wood & Parnell, P.A., Montgomery, Ala., for fountain.
 Clay, Massey & Gale, Edward Massey, Melissa A. Posey, Mobile, Ala., for Kirkland.
 Azar & Azar, P.C., George Azar, Edward Azar, Montgomery, Ala., for L.M. Henry, L.R. Henry and J.R. Peters.
 Brannan & Guy, P.C., J. Bernard Brannan, Jr., Montgomery, Ala., for Harrell.
 James Eldon Wilson, U.S. Atty., D. Broward Segrest, Asst. U.S. Atty., Montgomery, Ala., Rachel Jacobson, U.S. Dept. of Justice, Civil Div., Washington, D.C., for U.S.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before RONEY, Chief Judge, CLARK, Circuit Judge, and MORGAN, Senior Circuit Judge.
 MORGAN, Senior Circuit Judge:
 
 
 1
 This appeal arises from a civil action brought by the United States against certain Alabama mobile home contractors seeking recovery for proceeds unlawfully obtained through falsified invoices. Following a jury verdict, the district court entered its order awarding the government a total of $1,267,800 in damages and $24,000 in statutory penalties. Defendants appealed, alleging numerous errors, including the government was collaterally estopped from bringing a civil action against defendants because of a compromise agreement between the government and the defendants made at the time the guilty pleas were entered, the trial judge committed several acts of reversible error, and insufficient evidence was presented at trial from which the jury could render its inconsistent awards of damages. The government cross-appealed, contending the district court should have granted the government summary judgment on the issue of damages and should have awarded it a statutory penalty for each of the fifty-two invoices proved at trial. We affirm in part, remand in part.
 
 I. FACTS
 
 2
 In autumn 1979, in the aftermath of Hurricane Frederic, the President of the United States declared the State of Alabama to be a major disaster area within the meaning of 42 U.S.C. Sec. 5122. This Declaration authorized the Federal Emergency Management Agency ("FEMA") to send federal funds to Alabama for the purpose of administering a disaster relief effort. Two state officials, Limmie Lee Killough and Joseph Toofie Deep, managed a temporary housing program as part of the relief effort. The two state officials were responsible for awarding contracts for the set-up of mobile homes and for approving the payment of invoices submitted by the set-up contractors. Killough and Deep had authority to award contracts without obtaining bids.
 
 
 3
 In the process of administering the housing program, Killough and Deep solicited kickbacks from certain contractors in exchange for awarding them contracts. To generate the money for the kickbacks, the contractors would inflate the invoices they submitted. Killough and Deep would approve the inflated invoices for payment from the federal funds and the contractors would then kickback part of the money they received to Killough and Deep. The defrauding contractors included Luther Manuel Henry, Louis Rodney Henry, John R. Peters, William Donald Fountain, Jr., and James Louis Harrell, the appellants and cross-appellees in the case at bar (hereinafter "defendants").
 
 
 4
 The defendants were indicted in November 1982 on various charges arising out of the kickback scheme. They all entered guilty pleas to conspiracy to defraud the United States in violation of 18 U.S.C. Sec. 371. Luther Manuel Henry, Louis Rodney Henry, and James Louis Harrell also plead guilty to making false statements in violation of 18 U.S.C. Sec. 1001. In their guilty pleas, the defendants admitted they paid kickbacks of either $500 or $600 per set-up and that the kickback monies were generated by inflating the price of the mobile home set-ups.
 
 
 5
 In September 1985, the United States filed a civil action under the False Claims Act, 31 U.S.C. Secs. 3729-3731 (the "Act"), against the two state officials and the defendant contractors, seeking to recover damages allegedly sustained by the United States as a result of the kickback scheme, as well as penalties provided for by the Act. The government subsequently filed a motion for partial summary judgment based on the collateral estoppel effect of the defendants' guilty pleas. In its order and opinion of July 7, 1986, the district court granted the government's motion for partial summary judgment on the issues of liability and statutory penalties, but denied the motion with respect to the issue of actual damages. The court found there remained a question of material fact regarding the fair market value of the set-ups.
 
 
 6
 This issue was tried to a jury in October 1986. The jury returned a verdict against the defendants for a total of $633,900. The district court entered its order on October 31, 1986, doubling the amount of damages assessed by the jury in accordance with the Act. The court limited the statutory penalties, however, to those previously imposed by the court in its July 7 order.
 
 II. DISCUSSION
 A. Compromise Agreement
 
 7
 Defendants contend that the government is estopped from bringing this civil action because during the prior criminal proceedings the Assistant United States Attorney, Mr. Truncale, promised no further action would be taken against defendants if they plead guilty and fully cooperated with the government. No evidence was presented at trial to support this contention, other than a letter from Truncale to the United States probation office detailing the defendants' cooperation with the government.
 
 
 8
 The government may not be estopped on the same terms as any other litigant. Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). This circuit has held that for estoppel to apply against the government (1) the traditional elements of estoppel must have been present; (2) the government must have been acting in its proprietary capacity as opposed to its sovereign capacity; and (3) the government's agent must have been acting within the scope of his or her authority. United States v. Vonderau, 837 F.2d 1540, 1541 (11th Cir.1988); Fed. Deposit Ins. Corp. v. Harrison, 735 F.2d 408, 410 (11th Cir.1984).
 
 
 9
 The government is not estopped from bringing this action because even if Truncale actually made such an agreement with the defendants, as an Assistant United States Attorney he had no authority to do so. See 28 C.F.R. Pt. O, Subpt. Y, App., Directive No. 145-81. It is well settled that persons dealing with a governmental agent must take notice of the agent's authority and that any unauthorized acts taken by the agent do not bind the government. Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); Utah Power & Light Co. v. United States, 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); Bornstein v. United States, 345 F.2d 558, 562, 170 Ct.Cl. 576 (1965). The government is not estopped from asserting lack of authority as a defense. Bornstein, 345 F.2d at 562. Defendants in another False Claims Act case alleged they had an agreement with the Assistant United States Attorney that if defendants accepted a grant of immunity and testified for the government, defendants would not be liable to the government for any claim arising out of the conspiracy except civil tax liability. United States v. Kates, 419 F.Supp. 846, 858 (E.D.Pa.1976). The district court in Kates held that in his capacity as Assistant United States Attorney, the criminal prosecutor had no authority to compromise a civil claim of the United States. Id. In the case at bar, even if defendants had presented written evidence of such an agreement, Truncale's lack of authority would have rendered the agreement non-enforceable. See Dorl v. Comm'r of Internal Revenue, 507 F.2d 406, 407 (2d Cir.1974) (letter from revenue official to taxpayer unenforceable because revenue official lacked authority to execute formal closing of taxpayer's deficiency).
 
 
 10
 Thus, the government is not estopped from seeking civil damages from these defendants under the Act.
 
 B. Evidentiary and Procedural Errors
 
 11
 Defendants allege the trial judge committed numerous evidentiary and procedural errors. Defendants contend that their prior guilty pleas should not have been admitted into evidence, at least not without allowing defendants to explain the circumstances surrounding those pleas. Defendants also maintain that the district judge should have recused himself from the case because his conduct throughout the trial indicated his bias and prejudice toward the defendants. Lastly, defendants assert that the district judge committed reversible error by personally marking the jury form before giving it to the jury, and by sending the amended complaint, which was not admitted into evidence, back with the jury to be used in their deliberations.
 
 
 12
 We must determine whether any of these actions by the trial judge constituted error, and if so, whether the error affected a substantial right of the defendants. Only if an error prejudiced a substantial right of a defendant may a court of appeals reverse a lower court decision. See King v. Gulf Oil Co., 581 F.2d 1184 (5th Cir.1978);[1] Int'l Air Industries, Inc. v. American Excelsior Co., 517 F.2d 714 (5th Cir.1975), cert. denied, 424 U.S. 943, 96 S.Ct. 1411, 47 L.Ed.2d 349 (1976) (on appeal, trial errors which do not effect substantial rights of parties are to be disregarded).
 
 
 13
 Whether an error is harmless or prejudicial depends on the facts of each case. See Kotteakos v. United States, 328 U.S. 750, 761-63, 66 S.Ct. 1239, 1246-47, 90 L.Ed. 1557 (1946).[2] The specific action constituting error cannot be viewed in a vacuum; the entire record must be examined to determine whether the error influenced the jury. See Dunn v. Jefferson Standard Life Ins. Co., 123 F.2d 815 (5th Cir.1941). An error is presumed harmless unless it affected the substantial rights of a party. Fed.R.Civ.P. 61;[3] 28 U.S.C.A. Sec. 2111. The party asserting error has the burden of proving that the error prejudiced a substantial right of that party. Howard v. Gonzales, 658 F.2d 352, 357 (5th Cir. Unit A 1981); Coughlin v. Capitol Cement Co., 571 F.2d 290 (5th Cir.1978).
 
 1. Guilty Pleas
 
 14
 During the civil trial the government introduced the defendants' guilty pleas from the prior criminal investigation of the kickback scheme. Defendants objected to the admission of their pleas on several grounds. Defendants argue that since the district judge granted summary judgment on the issue of liability, there was no reason to allow the guilty pleas into evidence in the civil trial. By doing so, defendants contend, the district court improperly and prejudicially merged the civil case with the criminal case. Defendants maintain that even if the guilty pleas were relevant to the issue of damages, the prejudice inherent in the pleas far outweighed the necessity of introducing them. Finally, defendants assert that if the guilty pleas were relevant and admissible, the district court should have allowed the defendants to present evidence of the circumstances surrounding the pleas; in particular, the district judge should have allowed defendants to cross-examine Assistant United State Attorney Truncale about the events which occurred at the time the defendants plead guilty.
 
 
 15
 When an issue is resolved in favor of the United States in a criminal prosecution, that issue may not be contested by the same defendant in a subsequent civil suit brought by the government. Tomlinson v. Lefkowitz, 334 F.2d 262, 264 (5th Cir.1964), cert. denied, 379 U.S. 962, 85 S.Ct. 650, 13 L.Ed.2d 556 (1965). This rule applies in all civil cases brought by the United States where a defendant previously has been found guilty, either by a jury verdict or by a guilty plea. See Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 71 S.Ct. 408, 95 L.Ed. 534 (1951); In re Raiford, 695 F.2d 521 (11th Cir.1983). See also Sell v. United States, 336 F.2d 467 (10th Cir.1964) (in False Claims Act case, prior criminal conviction estops defendant contesting same issue in subsequent civil proceeding).
 
 
 16
 In the case at bar, the issues determined by the guilty pleas of the defendants were: (1) that all of the defendants were guilty of criminal conspiracy to violate the Act; (2) that three of the defendants were guilty of substantive violations of the Act; and (3) that the defendants admitted to paying a total of at least $577,400 in kickbacks generated by their inflated invoices. In this civil case the defendants were sued on the same conspiracy and the same substantive violations of the Act as those to which they plead guilty in the criminal case. Thus, defendants are precluded from contesting those issues here.
 
 
 17
 Under Fed.R.Evid. 801(d)(2)(A), a defendant's own statements are not hearsay and are admissible against him in court. Whether to admit evidence is within the trial judge's discretion. Fed.R.Evid. 104. So long as that evidence is relevant to the issues at trial and its probative value is not outweighed by the danger of unfair prejudice or confusion, the evidence may be admitted. Id., Fed.R.Evid. 403. A trial judge's decision to admit evidence may be overruled only if it was arbitrary or unreasonable. See United States v. Cole, 670 F.2d 35, 36 (5th Cir. Unit B 1982).
 
 
 18
 The issue at trial was the amount of damages, if any, the United States should be awarded for the defendants' malfeasance. Thus, the guilty pleas which contained defendants' admissions of the monetary amount of the kickbacks they paid were relevant. The pleas were not unfairly prejudicial to defendants since the judge had already granted summary judgment on the issue of liability, and the total damages the jury awarded were not excessive.
 
 
 19
 Defendants' supposition that they should have been allowed to present the evidence of the circumstances surrounding the their pleas is mistaken. Any dissatisfaction defendants had concerning the surrounding circumstances should have been pursued by an appeal from their criminal convictions. Collaterally attacking their pleas in the civil trial by introducing evidence of the surrounding circumstances would have confused the jury. It is within the trial judge's discretion to exclude evidence that would confuse the jury. Fed.R.Evid. 403. See United States v. Castell, 584 F.2d 87, 89 (5th Cir.1978), cert. denied, 440 U.S. 925, 99 S.Ct. 1256, 59 L.Ed.2d 480 (1979); United States v. Tidwell, 559 F.2d 262, 267 (5th Cir.1977). The district judge in the case at bar did not abuse his discretion in excluding this evidence.
 
 
 20
 Lastly, the district judge correctly prohibited the defendants from cross-examining Assistant United States Attorney Truncale about letters he wrote to a probation officer regarding the defendants' cooperation in the criminal case and about the alleged promise of no further action against the defendants. As explained, supra, there was no evidence in the record of any compromise agreement and even if there was, Truncale had no authority to make such an agreement. Also, as discussed supra, evidence of the defendants' previous cooperation with the government was collateral to the civil case and would have confused and misled the jury.
 
 
 21
 Truncale testified on direct only as a summary witness, see Fed.R.Evid. 1006, United States v. Evans, 572 F.2d 455, 491-92 (and citations therein) (5th Cir.) cert. denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978), to recapitulate various charts and other evidence the government introduced for calculation of a fair market value for the mobile home set-ups. Pursuant to Fed.R.Evid. 611(b), cross-examination of Truncale was limited to the subject matter of the direct examination. Moreover, as an Assistant United States Attorney, Truncale was covered by Justice Department regulations. Under 28 C.F.R. Sec. 16.21 et seq., defendants who wish to solicit testimony on cross from an Assistant United States Attorney which goes beyond the scope of the testimony given on direct must receive prior approval from officials at the Justice Department. The defendants in the case at bar failed to comply with these regulations as the trial judge noted when he ruled to limit their cross-examination of Truncale.
 
 2. Recusal
 
 22
 Defendants contend that the trial judge was biased and prejudiced against them as evidenced by his remarks made throughout the trial and that this sentiment was conveyed to the jury. A judge must disqualify himself if his impartiality might reasonably be questioned or if he has a personal bias or prejudice against a party. 28 U.S.C. Sec. 455. Usually, bias sufficient to disqualify a judge must stem from an extrajudicial source, except "where such pervasive bias and prejudice is shown by otherwise judicial conduct as would constitute bias against a party." Davis v. Bd. of School Comm'rs of Mobile County, 517 F.2d 1044, 1051 (5th Cir.1975), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976). A judge should be disqualified only if a reasonable person, apprised of all the facts and circumstances, would question the judge's impartiality. Hunt v. Am. Bank & Trust Co. of Baton Rouge, 783 F.2d 1011, 1015 (11th Cir.1986); Potashnick v. Port City Constr. Co., 609 F.2d 1101, 1110-11 (5th Cir.), cert. denied, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).
 
 
 23
 It was unnecessary for the district judge to recuse himself. Many of the district judge's remarks of which defendants complain were made outside of the presence of the jury. Other remarks made by the district judge within the jury's presence did not indicate that the judge was biased or prejudiced against any of the defendants. See Hamm v. Members of Bd. of Regents of State of Fla., 708 F.2d 647, 651 (11th Cir.1983) ("Neither a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias."). The district judge treated both sides equally, chastising the parties only when necessary to control the tenor of the trial.
 
 3. Amended Complaint and Jury Form
 
 24
 The jury rendered its verdict using a verdict form supplied by the trial judge. The verdict form set forth the name of each defendant, the counts of the complaint under which the defendant was sued, and a blank space for damages should the jury decide to award any against the particular defendant. The defendants, under separate counts, allegedly conspired to violate the Act and allegedly committed substantive violations of the Act. Prior to trial, the district judge had granted summary judgment against all of the defendants as to the conspiracy counts and against some of the defendants as to the substantive counts. Thus, all that remained as to those counts was a determination of damages.
 
 
 25
 Before he delivered the verdict form to the jury, the district judge marked the form to indicate to the jury that liability for those particular defendants on those particular counts already had been established. Personally bringing the form over to the jury, the district judge instructed:
 
 
 26
 Now you will see that in a few instances liability has already been determined, but not the amount of the liability. In those instances, in order to show you how to use this verdict form, I have taken the liability [sic] to go ahead and find for you, or for the Court, really, not for you, that William Donald Fountain on count one is liable. But that doesn't mean that he must pay damages. The amount of damages is up to you, as I have told you earlier.
 
 
 27
 Defendants contend that by marking the verdict form and personally approaching the jury box, the district judge exerted improper influence over the jury and in fact became a member of the jury. These assertions are frivolous. Neither action constituted error. It was imperative for the district judge to apprise the jury that liability for those particular counts had been established. Furthermore, the judge did not "become a member of the jury" when he approached the box; he merely ensured that the jury clearly understood to what he was referring in his instructions.
 
 
 28
 The day before this case was given over to the jury, the trial judge had the government amend the complaint to conform to the evidence presented at trial. In giving the amended complaint to the jury, the trial judge instructed them
 
 
 29
 The complaint ... will go with you to the jury room.... There has been a great deal cut out of the complaint that you will not have to be concerned with ... And you will have it to look at and decide what each defendant is charged with, if you see fit. The lawyers have told you what they are charged with. They made sketches of what they think they are charged with. And, of course, you will have an opportunity to look at the complaint in the light of those charts if you need to look at the complaint.... Bear in mind that the plaintiff, the government, has the burden of proving each material element of each count in the indictment [sic] by a preponderance of the evidence. And, of course, you will consider each count as it may apply to each defendant separately, and decide what that defendant under that count is responsible for, if anything.
 
 
 30
 * * *
 
 
 31
 Defendants argue that the amended complaint still contained unproven allegations, that the blank spaces in the amended complaint emphasized what remained, and that the monetary amounts of kickbacks were in different type so that the amounts also were unduly emphasized.
 
 
 32
 Often the pleadings, both complaint and answer, are sent back with the jury to be used in a technical fashion as a summary of what the plaintiff alleges and what defenses the defendant has to those allegations. The district court erred in sending only the amended complaint back with the jury. Viewing the record as a whole and the amount of damages the jury awarded, this error did not prejudice any substantial right of the defendants. The information included in the amended complaint was merely cumulative. See Brooks v. Texas Gen. Indem. Co., 251 F.2d 15 (5th Cir.1958). See also Wood v. General Teamsters Union Local 406, 603 F.Supp. 992 (W.D.Mich.1985) (sending two documents not in evidence back with jury was harmless error where documents merely repeated what had been presented at trial). Furthermore, if the jury did review the amended complaint it had little effect on their verdict which awarded damages totalling one-fourth of the total damages alleged in the amended complaint.
 
 
 33
 C. Evidence.
 
 
 34
 Defendants contend that the evidence presented to the jury was insufficient to support the jury's determination of damages. Defendants argue that the measure of damages should have been based on the difference between the fair market value for the set-up of each individual home and what the government actually paid, and that the government failed to carry its burden of proving the fair market value of each of some 1,182 mobile home set-ups.
 
 
 35
 Despite presenting evidence at trial of the multiplicity of factors which may enter into the cost of setting up a particular mobile home, defendants cannot avoid the fact that the inflated invoices they presented for payment from federal funds contained one price for all set-ups on commercial sites and another price for all set-ups on private sites, regardless of the different factors which may have been associated with the individual set-ups. The government introduced the inflated invoices into evidence, as well as testimony from other contractors who were willing to do the work for less money and expert testimony on the fair market value for mobile home set-ups under these conditions. Taken together, this was more than sufficient evidence from which the jury could have determined damages attributable to the defendants. Although "speculation and guesswork" should not be the basis for ascertaining damages, United States v. Collver Insulated Wire Co., 94 F.Supp. 493, 498-99 (D.R.I.1950), damages need not be calculated by mathematical precision.
 
 
 36
 In such a case, even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances "juries are allowed to act upon probable and inferential as well as [upon] direct and positive proof." [Citing Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 561-64, 51 S.Ct. 248, 250-51, 75 L.Ed. 544 (1931); Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 377-79, 47 S.Ct. 400, 404-05, 71 L.Ed. 684 (1927).] Any other rule would enable the wrongdoer to profit by his wrongdoing at the expense of his victim. It would be an inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain.
 
 
 37
 Failure to apply it would mean that the more grievous the wrong done, the less likelihood there would be of a recovery.
 
 
 38
 The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created.
 
 
 39
 Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264-65, 66 S.Ct. 574, 579-80, 90 L.Ed. 652 (1946).
 
 
 40
 D. Verdicts.
 
 
 41
 In a related argument, defendants insist that because the jury awarded the government inconsistent monetary damages for each defendant, that the jury failed to apply the facts to the law, or that they did not understand the judge's instructions. Defendants base this argument on their assertion that the government had to present evidence of the fair market value of each mobile home, see supra. Defendants contend that when the damages assessed against a particular defendant are divided by the number of mobile homes that defendant set up, the monetary damages per individual mobile home differ from defendant to defendant.
 
 
 42
 The jury made a finding of fact as to the fair market value of the set-ups and calculated damages accordingly. Findings of fact may be set aside only if they are clearly erroneous. King, 581 F.2d at 1186. As discussed, supra, defendants did not submit invoices specifying the cost of each mobile home set-up. Each defendant charged a certain price for set-ups on commercial sites and a certain price for set-ups on private sites. Although all the defendants' prices were in the same range, each defendant's prices did not precisely match each other defendant's prices. Moreover, each defendant set up a different number of mobile homes. Thus, the different verdict amounts awarded against each defendant were consistent with the evidence presented.
 
 
 43
 E. Actual Damages.
 
 
 44
 The government contends that the lower court should have granted the government summary judgment on the issue of damages because as a matter of law the measure of damages was at least equal to the amount of the kickbacks. The government cites no direct authority, however, for this proposition. Instead, it analogizes kickbacks to bribes, citing bribery cases where federal courts have conclusively presumed the measure of damages to be the amount of the bribe.
 
 
 45
 Although a bribe and a kickback are both corrupt payments to a party to induce a desired reaction, they cannot be treated interchangeably for the method of computing damages. Under the Act, there is no set formula for determining the government's actual damages.
 
 
 46
 No single rule can be, or should be, stated for the determination of damages under the Act ... Fraudulent interference with the government's activities damages the government in numerous ways that vary from case to case. Accordingly, the committee believes that the courts should remain free to fashion measures of damages on a case by case basis. The Committee intends that the courts should be guided only by the principles that the United States' damages should be liberally measured to effectuate the remedial purposes of the Act, and that the United States should be afforded a full and complete recovery of all its damages.
 
 
 47
 S.Rep. No. 615, 96th Cong., 2d Sess. at 4. Case law indicates the measure of damages is generally determined to be the difference between what the government actually paid on the fraudulent claim and what it would have paid had there been fair, open and competitive bidding. See Brown v. United States, 524 F.2d 693, 706, 207 Ct.Cl. 768 (1975); United States v. Woodbury, 359 F.2d 370, 379 (9th Cir.1966); United States v. Am. Precision Prods. Corp., 115 F.Supp. 823, 828 (D.N.J.1953). The trier of fact must deduce from all the evidence presented what the fair market value was of the goods or services provided in order to calculate the actual damage the government suffered.
 
 
 48
 Defendants offered evidence at trial that other contractors submitted contracts for set-ups that were as much as, if not more than, the bids defendants submitted. Defendants contend that this evidence proves the government could not find a better price for the set-ups, and thus the government suffered no actual damages. We are not persuaded by this argument. Not only does it ignore contrary evidence put on by the government, but also it infers that paying kickbacks to get government contracts would be legitimate so long as no one else submitted a lower bid. When an official acting on behalf of the government receives money to which he is not entitled for the purpose of inducing that official to act in a certain manner, the government has been damaged to the extent that such corruption causes a diminution of the public's confidence in the government, see United States v. Mississippi Valley Generating Co., 364 U.S. 520, 562, 81 S.Ct. 294, 315, 5 L.Ed.2d 268 (1961), as well as by any excess money it paid and the administration costs of prosecuting the case.
 
 
 49
 Defendants, in their guilty pleas, admitted paying $577,000 in kickbacks. Although this sum was neither a floor nor a conclusive presumption of the measure of damages, it was relevant as circumstantial evidence. Weighing that evidence as well as all of the other facts before it, the jury returned a verdict totalling $633,000 in actual damages. This determination was not clearly erroneous. See King, 581 F.2d at 1186. Therefore, we affirm the doubled damage award of $1,267,000. See 31 U.S.C. Sec. 3729.
 
 
 50
 F. Statutory Forfeitures.
 
 
 51
 The Act provides that a defendant shall forfeit $2,000 for each false claim submitted to the government.[4] The district court, in its grant of partial summary judgment, awarded the government a total of $24,000 for the twelve false claims to which the defendants admitted in their guilty pleas. In its final judgment, the district court limited the forfeiture award to the $24,000. On cross-appeal, the government contends that at trial it proved the defendants had submitted a total of fifty-two false claims, and, therefore, the defendants should forfeit a total of $104,000.
 
 
 52
 Defendants counter that a district court awarding forfeitures under the Act may exercise its discretion to ensure that the forfeitures reflect a fair ratio to the actual damages claimed by the United States. Defendants argue that the purpose of forfeitures and double damages under the Act is to ensure full and complete recovery of any funds obtained from the Federal Treasury by use of the false claims and that in this instance imposition of double damages more than adequately compensates any loss by the Treasury and any costs incurred in this investigation and litigation. To then add forfeitures, defendants contend, would be punitive and thus impose multiple punishments on the defendants in violation of the Double Jeopardy Clause.
 
 
 53
 The False Claims Act was enacted in 1863 to punish and prevent fraudulent practices prevalent during the Civil War. Nowhere in the legislative history of the original Act was there any discussion of how to determine what a "claim" was for the assessment of forfeitures. The Supreme Court has determined that the term "claim" should not be given a narrow reading. United States v. Neifert-White Co., 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968). "This remedial statute reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the government to pay out sums of money." Id. Case law on this issue indicates that each separate fraudulent submission by a defendant demanding payment from the government is a "claim." See United States ex. rel. Marcus v. Hess, 317 U.S. 537, 552, 63 S.Ct. 379, 388, 87 L.Ed. 443 (1943); Faulk v. United States, 198 F.2d 169, 171 (5th Cir.1952); Am. Precision, 115 F.Supp. at 828; United States v. Collver Insulated Wire Co., 94 F.Supp. 493, 496-97 (D.R.I.1950). For example, where ten fraudulent vouchers were submitted containing schedules for 130 items, each voucher was a "claim" and thus ten $2,000 forfeiture were assessed against the defendant, not 130 forfeitures, one for each item listed on the schedules. See United States v. Grannis, 172 F.2d 507 (4th Cir.), cert. denied, 337 U.S. 918, 69 S.Ct. 1160, 93 L.Ed. 1727 (1949).
 
 
 54
 In the case at bar, if the fifty-two invoices were fraudulent, the government should have been awarded a total of $104,000 in forfeitures. We are unable to determine, however, if the government carried its burden of proving that each of the fifty-two invoices were fraudulent because the district judge made no mention of forfeitures in his final judgment except to reiterate the twelve forfeitures he previously had imposed. We therefore remand the issue of forfeitures back to the district court to make a finding as to whether any or all of the fifty-two invoices were fraudulent. If the district court determines that any or all of these invoices were fraudulent, then it must assess the statutory forfeiture against each false claim.
 
 
 55
 Defendants mistakenly rely on Peterson v. Weinberger, 508 F.2d 45 (5th Cir.), cert. denied sub nom. Peterson v. Mathews, 423 U.S. 830, 96 S.Ct. 50, 46 L.Ed.2d 47 (1975), to argue that imposition of the statutory forfeitures is discretionary. In Peterson, the Fifth Circuit recognized that the issue of forfeitures was not properly before it, and only in dicta did it comment that the monetary sum of the forfeitures "should reflect a fair ratio to [actual] damages." Id. at 55.
 
 
 56
 Contrary to defendants' argument, imposition of forfeitures under the Act is not discretionary, but is mandatory for each claim found to be false. United States v. Hughes, 585 F.2d 284, 286 (7th Cir.1978); S.Rep. No. 615, 96th Cong., 2d Sess. at 2 (1981) (Senate Report pertaining to amendments updating the Act). In the legislative history accompanying the 1986 amendments to the Act, the Peterson "fair ratio" supposition specifically was disapproved. S.Rep. No. 615, 96th Cong., 2d Sess. at 2 n. 4. Even if no payment was made on a claim or the government cannot prove actual damages, a forfeiture shall be awarded on each false claim submitted. Brown, 524 F.2d at 706; Toepleman v. United States, 263 F.2d 697, 700 (4th Cir.), cert. denied sub nom. Cato Bros., Inc. v. United States, 359 U.S. 989, 79 S.Ct. 1119, 3 L.Ed.2d 978 (1959); Am. Precision, 115 F.Supp. at 827-28.
 
 
 57
 Defendants cite United States v. Halper,[5] 664 F.Supp. 852 (S.D.N.Y.1987), to argue that to impose the total forfeitures requested by the government would be to unconstitutionally punish defendants twice for the same offense. In Halper, although the district court recognized imposition of a forfeiture for each false claim submitted is mandatory under the Act, it refused to impose $130,000 in forfeitures where the government's actual loss was $585. Id. at 854. The district court held that in that particular case, such a disproportionate award would violate the Double Jeopardy Clause prohibition against multiple punishments for the same offense where the defendant already had been sentenced to two years in prison and a $5,000 penalty for the same fraudulent acts. Id. at 855.
 
 
 58
 In the case at bar, the Double Jeopardy Clause would not be implicated even if the district court were to find all fifty-two invoices fraudulent. Only where a defendant is subjected to successive actions, both authorizing punishment the purpose of which is to vindicate public justice, is the defendant placed in "jeopardy" within the constitutional construction. See Hess, 317 U.S. at 548-49, 63 S.Ct. at 386-87, 87 L.Ed. 443, citing Helvering v. Mitchell, 303 U.S. 391, 397-98, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938). It is well settled that for one act a person may be held both criminally and civilly liable. Hess, 317 U.S. at 549, 63 S.Ct. at 386-87. "A man may be compelled to make reparations in damages to the injured party, and be liable also to punishment for a breach of the public peace, in consequence of the same act; and may be said, in common parlance, to be twice punished for the same offense." Hess, 317 U.S. at 549, 63 S.Ct. at 387, quoting Moore v. Illinois, 55 U.S. (14 How.) 13, 19-20, 14 L.Ed. 306, 308-09 (1852). The Act is a remedial statute. Its purpose is not to "vindicate public justice" but to protect the government against financial loss. See Hess, 317 U.S. at 549, 63 S.Ct. at 387; S.Rep. No. 615, 96th Cong., 2d Sess. at 2. Forfeitures and double damages recompense the government for costs of the investigation and litigation as well as the actual monetary damage incurred because of the defendant's fraud. Even if the district court awards $104,000 in forfeitures along with the doubled damages of $1,267,800, it "will do [no] more than afford the government indemnity for the injuries done it." Hess, 317 U.S. at 549, 63 S.Ct. at 387, citing Helvering, 303 U.S. at 401, 58 S.Ct. at 634.
 
 III. CONCLUSION
 
 59
 We REMAND the issue of statutory forfeitures back to the district court for a finding as to how many invoices were fraudulent with an order awarding any additional forfeitures in accordance with this opinion. We AFFIRM the remaining findings of fact and conclusions of law.
 
 
 
 [1]
 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981
 
 
 [2]
 Although Kotteakos was a criminal conspiracy case, Justice Rutledge recognized that the "harmless error" rule makes no distinction between civil and criminal causes. Kotteakos, 328 U.S. at 762, 66 S.Ct. at 1246
 
 
 [3]
 Although Rule 61 is technically a mandate to the district courts, the Rule should be heeded by courts of appeal to make it effective. Gillis v. Keystone Mut. Casualty Co., 172 F.2d 826, 830 (6th Cir.), cert. denied, 338 U.S. 822, 70 S.Ct. 67, 94 L.Ed. 499 (1949)
 
 
 [4]
 The Act was amended on October 27, 1986, to provide, inter alia, for treble damages and for statutory forfeitures of up to $10,000. In the present action, the government filed a motion to amend judgment on November 7, 1986, seeking statutory forfeitures of $2,000 per false claim. The government did not ask for damages in accordance with the amended statute
 
 
 [5]
 Petition for certiorari was filed February 17, 1988