**In re BICOASTAL CORPORATION, d/b/a Simuflite, f/k/a The Singer Company, Debtor.**

**Bankruptcy No. 89–8191–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 6, 1991.

See also 124 B.R. 593.

Harley E. Riedel, II, Stichter & Riedel, P.A., Tampa, Fla. Oppenheimer Wolff & Donnelly, St. Paul, Minn., Oppenheimer Wolff & Donnelly, Chicago, Ill. for debtor.

Douglas McClurg, Holland & Knight, Tampa, Fla. for CAE Industries.

Lynne England, Asst. U.S. Trustee, Tampa, Fla.

William M. Goldman, Brown & Wood, New York City, for Creditors Committee.

Francis H. Cobb, Dykema Gossett, Spencer, Tampa, Fla. for Unsecured Creditors Committee.

Robert E. Montgomery, Jr., Paul, Weiss, Rifkin, Whartin & Garrison, Washington, D.C., for Taxpayers Against Fraud.

John Patrick Jr., Sp. Asst. U.S. Atty., Tampa, Fla.

Department of Justice, Civ. Div., J. Christopher Kohn, Washington, D.C.

## ORDER ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 case. The matter under consideration involves the estimation of a claim filed by the United States of America (Government) against Bicoastal Corporation, d/b/a Simuflite, f/k/a The Singer Company (Debtor). The claim, which is admittedly a contingent and unliquidated claim, thus subject to the estimation process provided for by § 502(c)(1) of the Bankruptcy Code, is challenged by the Debtor, contending that if the Government's claim is allowable at all, it is certainly not in the amount claimed by the Government.

In order to put the matter under consideration in proper perspective, it should be helpful to recap briefly certain relevant facts as they appear from the record and which are germane to the matter under consideration.

### Relevant Factual Background of the Issues Involved

Link Flight Simulation Corporation is a former division of The Singer Company (Singer), the Debtor's predecessor-in-interest. Between 1980 and 1988, the Department of Defense (DLA) contracted with Singer and Link Flight (hereinafter referred to as the Debtor) to produce flight simulators for the Government to be used in training pilots. These contracts were sole-source, fixed-price contracts and were awarded to the Debtor as a result of extensive negotiations and not by utilization of bid-process. Thus, the Debtor had no competition from other Government contractors when they obtained the contracts in question.

On November 14, 1988, Christopher Urda (Urda), a former bids-and-pricing administrator for the Debtor, filed suit in the District Court in Maryland in the name of the United States under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). An organization called "Taxpayers against Fraud" joined Urda in bringing the suit styled *United States, ex rel. Taxpayers Against Fraud and Christopher Urda v. Link Flight Simulation Corp., CAE–Link Corp. and Singer Co.*, 722 F.Supp. 1248 (D.Md.1989). The Plaintiffs sought damages in the amount of $77 million to be trebled to $231 million pursuant to 31 U.S.C. § 3729(a)(1), (2). Based on the investigation by the Government into the allegations made in the lawsuit, the

Government elected to join in the action and filed its first amended Complaint on March 14, 1989. In its claim, the Government seeks damages in the amount of $77 million to be trebled to a total of $231 million pursuant to 31 U.S.C. § 3729, *et seq.* The complaint filed in the United States District Court in Maryland is based on the contention that the Debtor engaged in a scheme to defraud the Government during the negotiation process by failing to disclose in its "best estimate" costs for "contingency reserves." Specifically, it is contended that the Debtor included in its "best estimate" possible reductions it might have to absorb in the ultimate contract price which would likely occur during the negotiation process. This, according to the Government, was an improper inclusion in the Debtor's "best estimate" because it tainted the entire negotiation process, which in turn damaged the Government to the extent claimed, to-wit, $77 million.

On November 11, 1989, the Debtor filed its Petition for Relief under Chapter 11. As a result of the operation of the automatic stay imposed by § 362(a) of the Bankruptcy Code, the Maryland litigation was brought to a halt. In due course, the Government filed a Motion and sought relief from the automatic stay, or a determination that the stay does not apply because of the exception to the automatic stay provided for by 11 U.S.C. § 362(b)(4). The Government sought the relief in order to liquidate its claim in the United States District Court in Maryland.

This Court denied the Motion for Relief from Stay and directed that the Government claim filed in the interim should be estimated pursuant to § 502(c)(1) of the Bankruptcy Code. Although at present the estimation process is directed to only the seven contracts stated in the Government's initial claim, the Debtor had substantially more of the same type contracts with the Government, all of which, according to the Government, may form the basis for additional claims against the Debtor under the False Claims Act. It is agreed that the method of calculating damages will be applicable to all the other contracts. The seven contracts in question represent dol-

larwise the majority of the total amount of all contracts involved.

The issue presently under consideration is presented by the Motions for Summary Judgment and is limited to the determination as to the proper measure to calculate the damages which, under the law, is appropriate and shall be used in connection with the estimation process of the claim filed by the Government. The parties are in agreement that the issue under consideration could be resolved as a matter of law in their respective favors because there are no genuine issues of material facts relevant to the limited issue. While the matter is presented for this Court's consideration by Motions for Summary Judgment, this Court is satisfied that the Motions are really in the nature of a motion in limine and seek a determination in advance as to the proper measure to calculate the damages claimed by the Government based on the applicable law. It should be emphasized, however, that the liability of the Debtor under the False Claims Act, *supra,* is presumed, but only for the purpose of the estimation process, and the ultimate resolution of the amount of damages shall have no bearing on the Debtor's liability to the Government vel non based on the False Claims Act.

It is the Government's position that its damages are based on the dollar-for-dollar amount of the undisclosed "negotiation reserve" by which the Debtor's certified contract proposal, i.e., "best estimate" submitted to the Government, was allegedly inflated. In essence, the Government seeks damages based on the claimed false "best estimate" submitted by the Debtor to the Government in the negotiation process. Thus, according to the Government, its damages should be the original "best estimate" provided by the Debtor, less the final proposal submitted by the Debtor.

In contrast, the Debtor contends that the proper measure of damages is the "actual damages" suffered, that is, the amount which the Government ultimately paid for these contracts, matched against the amount the Government should have paid had no "contingency reserves" been includ-

ed in the Debtor's "best estimate". Specifically, it is the Debtor's contention that it should receive credit where the final price of a bid item was less than the original best estimated price of a particular line item.

The False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, provides, *inter alia*, for the award of treble damages and forfeitures for the presentation of a false claim or the making of a false statement in order to obtain a payment from the United States Government. 31 U.S.C. § 3729(a)(1), (2). The regulation governing sole-source, fixed-price contracts requires the creditor to submit to the Government its "best estimate" of the costs necessary to perform the particular contract. Any contingencies in the best estimate must be disclosed. *See* 48 C.F.R. 15.804–6; FAR 15.804–6 (1989).

The False Claims Act itself contains no formula for determining the damages the Government is entitled to recover.

No single rule can be, or should be, stated for the determination of damages under the Act.... Fraudulent interference with the government's activities damages the government in numerous ways that vary from case to case. Accordingly, the Committee believes that the courts should remain free to fashion measures of damages on a case by case basis. The Committee intends that the courts should be guided only by the principles that the United States' damages should be liberally measured to effectuate the remedial purposes of the Act, and that the United States should be afforded a full and complete recovery of all its damages.

*United States v. Killough*, 848 F.2d 1523, 1532 (11th Cir.1988), quoting S.Rep. No. 615, 96th Cong., 2d Sess. at 4.

This Court is satisfied that the congressional intent in enacting the False Claims Act was to protect the Government from paying inflated prices for goods and services, and to deter entities who contract with the Government from artificially inflating contract offers submitted to the Government. This congressional intent assumes an even greater significance when the Government is dealing with a sole-source, fixed-price contract which lacks all of the protections inherent in the competitive bidding process.

As noted earlier, the original lawsuit was filed in the District Court in Maryland by Urda and the Taxpayers against Fraud, and later on taken over by the Government. The District Court in that lawsuit issued an injunction restricting the Debtor's right to expend its funds. The Debtor challenged the Order by filing a timely Notice of Appeal. On appeal, the Fourth Circuit Court, in *United States ex rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327 (4th Cir.1989), discussed at great length the proper measures to be used to calculate the damages of the United States. The court noted that there is a rebuttable presumption that "the Government is damaged dollar-for-dollar by the nondisclosed amount once nondisclosure is shown." *Id.* at 1333. The court further noted that the fraudulent inflation of proposals submitted by the debtor was presumed to so distort the negotiation process for a sole-source contract that the final contract price would likely have been lower than the final "best estimate" if the original estimates were not fraudulently inflated. *Id.*

The Fourth Circuit Court found, and this Court agrees, that Singer could not rebut the presumption on the basis that the "contingency reserves" were negotiated away. This Court cannot fathom how the Government could possibly negotiate away an unknown nondisclosed cost component. According to the Fourth Circuit:

Because the government is presumed to have made out a prima facie case that it would have spent dollar-for-dollar less than the undisclosed, fraudulent amount, the offender must meet the burden of showing "nonreliance on behalf of the Government in order to rebut the natural and probable consequences of the existence of the nondisclosed or inaccurate data."

Thus, to rebut the presumption entirely, the contractor must show that it would not have accepted further reductions and that the Government would still have spent the

ultimate contract price, or the contracting party would not have contracted at all.

The Debtor, realizing that the Fourth Circuit decision on appeal in *U.S. Ex Rel. Taxpayers Against Fraud v. Singer Co.*, 889 F.2d 1327 (4th Cir.1989), furnished more than ample support for the proposition urged by the Government, contends first that the decision is not binding on this Court; second, that in any event, the ruling came up in the context of a motion on appeal from an order granting a permanent injunction and the comments relied on by the Government are merely *dicta*. Lastly, it is the contention of the Debtor that the Court of Appeals relied on cases which involved the Truth in Negotiations Act (TINA), 10 U.S.C.A. § 2304 and § 2306, and *not* claims which involved claims under the False Claims Act. *See Sylvania Elec. Prod., Inc. v. United States*, 479 F.2d 1342, 1349 n. 7, 202 Ct.Cl. 16 (1973), and *Universal Restoration, Inc. v. United States*, 798 F.2d 1400, 1406 (Fed.Cir.1986). Thus, according to the Debtor, the fraud presumption applicable under TINA is not applicable to a claim made under the False Claims Act.

While it is true that the Fourth Circuit discussed the matter on appeal in the context of an order from injunction, nevertheless, this is the only authority which, to this Court's knowledge, dealt with this subject, and the reasoning based on the legislative history of the False Claims Act is certainly persuasive.

Finally, this Court is satisfied that the Debtor is not entitled to reduce the Government's damages by the amount of negotiation concessions made by the Debtor. To allow the Debtor to use these concessions to reduce the Government's damages is to essentially punish the Debtor by only the amount which the Government did not negotiate away. This would, in effect, serve to forgive the Debtor for its attempt to cheat the Government in instances where it was not successful.

In light of the fact that the False Claims Act is intended to deter fraudulent conduct when negotiating with the Government, this Court is satisfied that the Government's damages should not be offset by negotiation concessions.

In sum, this Court is satisfied that the proper measure of damages is the amount of undisclosed negotiation reserves included in the Debtor's original "best estimate" provided to the Government. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion for Summary Judgment be, and the same is hereby, denied, and the Government's Motion for Summary Judgment be, and the same is hereby granted.

DONE AND ORDERED.

