[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10454
Non-Argument Calendar

_____

D.C. Docket No. 1:12-cv-00102-RS-GRJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee

versus

SAMIM ANGHAIE,
SOUSAN ANGHAIE,
Individually,
d.b.a. New Era Technology Inc.,

Defendants-Appellants,

NEW ERA TECHNOLOGY INC.,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 30, 2015)

Before HULL, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Samim Anghaie and Sousan Anghaie appeal the district court's final summary judgment against them in a False Claims Act (FCA) case brought by the United States. Samim Anghaie is a former University of Florida professor. The government alleged that he and his wife Sousan made false statements to win four contracts for research funding through grant programs administered by NASA and the United States Air Force. The Anghaies were convicted of criminal charges based on the same allegations. The government then filed this civil lawsuit to recover damages and civil penalties. The district court took judicial notice of the record from the criminal case and awarded $2,746,631.37 in damages (three times the amount the government paid through the four contracts) plus a civil penalty of $231,000 ($11,000 for each of twenty-one false claims).

The Anghaies make four claims on appeal. First, they claim two of the counts in the complaint are time-barred. Second, they claim summary judgment was not appropriate on the issue of liability. Third, they claim the district court made mistakes in calculating damages. And fourth, they claim the district court imposed an excessive fine. After careful review of the record and the parties' briefs, we vacate the two counts challenged as time-barred but otherwise affirm.

2

I.

The Anghaies first claim that two of the counts in this case are barred by the statute of limitations.  The FCA provides that no civil action may be brought after the later of either six years from the date of the violation or three years from when the government should have known of the violation.  31 U.S.C. § 3731.  We review de novo a district court's application of a statute of limitations.  Berman v. Blount Parrish & Co., 525 F.3d 1057, 1058 (11th Cir. 2008).

Counts 2 and 3 involve payments made in January and April 2006.  The complaint was filed on May 11, 2012.  The government has disclaimed its initial opposition to the Anghaies' statute of limitations argument in light of the Supreme Court's recent decision in Kellogg Brown & Root Servs., Inc. v United States ex rel. Carter, __ U.S. at __, 135 S. Ct. 1970 (2015), which held that the Wartime Suspension of Limitations Act, 18 U.S.C. § 3287, does not apply to civil actions brought under the FCA.  Counts 2 and 3 are barred by the statute of limitations, so the Anghaies prevail on this claim.

II.

The Anghaies next argue the district court should not have granted summary judgment on the issue of liability because some of the FCA counts in this case correspond to fraud counts on which they were acquitted in the criminal trial.  For the remaining FCA counts, the Anghaies point to evidence of their alleged

3

misstatements as constituting disputed issues of material fact.  We review a grant of summary judgment de novo, drawing all inferences in the light most favorable to the non-moving party.  Palm Beach Golf Ctr.–Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1253 (11th Cir. 2015).  Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Section 3279(a)(1) of the FCA authorizes a civil penalty plus treble damages for anyone who either (A) knowingly presents a false claim for payment to the government, (B) knowingly makes a false record that is material to a false claim for payment, or (C) conspires to violate either (A) or (B).  31 U.S.C. § 3729(a)(1)(A)–(C).  The term "knowingly" does not require specific intent to defraud, only knowledge of the false information or deliberate ignorance or reckless disregard of its falsity.  31 U.S.C. § 3729(b)(1).  The FCA further provides that "a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements . . . shall estop the defendant from denying the essential elements of the offense" in any civil FCA action that involves the same transaction.  31 U.S.C. § 3731(e).  The district court relied on this last provision to find that the Anghaie's criminal convictions estopped them from disputing liability for twelve of the counts alleged here and went to find no genuine issues of material fact for the remaining counts.  We agree.

The Anghaies were convicted of wire fraud for making materially false statements in proposals for three contracts, as well as in the progress reports for one of these three. For a fourth contract, the jury convicted them only as to false claims in the final report. The trial judge told the jury that these charges required proof beyond a reasonable doubt that the Anghaies "devised or participated in a scheme to obtain money . . . based on false pretenses, representations, or promises . . . about a material fact." The Anghaies were also convicted of conspiring to defraud the government. These convictions required proof beyond a reasonable doubt that the Anghaies agreed to accomplish an unlawful plan; that they knew the unlawful purpose of the plan and joined willfully; that they engaged in at least one of the charged overt acts; and that they knowingly committed that act with the purpose of accomplishing some object of the conspiracy. Based on their convictions, the Anghaies are estopped from denying either that they conspired to defraud the government or that they knowingly made false claims.

The record from the criminal case further shows that the Anghaies' false statements were material to the government deciding to pay false claims. First, all the fraud charges required the jury to find beyond a reasonable doubt that "the false pretenses, representations, or promises were about a material fact." And the jury heard much evidence tying the Anghaies' false statements to decisions to award money. For example, Bryan Palaszewski testified that he recommended

5

approving a contract based on the Anghaies' false statements about the principal investigator on the project, the existence of a laboratory assistant, and the absence of subcontractors.  Carol Cobbs gave similar testimony about two other contracts.

Even though for one contract the Anghaies were convicted of lying only in the final report, the record still shows that the Anghaies' false claims were material to them getting paid on this contract.  For example, the proposal for this contract listed as the principal investigator someone who never worked on that contract. Mitat Birkan testified that it would "have been a problem" if he knew this earlier. He also testified that he would not have approved payments if he had known that research in the final report for this contract "had been taken wholly from a doctoral dissertation written in 1997 by one of Dr. Anghaie's students."

The Anghaies claim that there remain specific disputed material facts related to whether their misrepresentations were material.  They argue there are disputed facts about (1) whether the sentencing court rejected the summary of the core offense conduct in the Presentence Investigation Report (PSI) when it sustained some of the Anghaies' objections; (2) whether Angelo Ferrari was inaccurately represented as a principal investigator; (3) whether Birkan considered Ferrari's role important in recommending a contract; (4) whether the Anghaies had permission to use research performed by an unrelated researcher; and (5) whether invoices were required for any of the contracts.  The Anghaies also reference vast swaths of the

6

trial record for the blanket assertion that "each of the testimonial excerpts cited by the government as 'fact' was put in dispute at the criminal trial."

None of these arguments raises a genuine issue of material fact. First, the sentencing court adopted the PSI's summary of the core offense conduct. Second, the record from the criminal trial reflects that Ferrari was listed for a contract he never worked on. Third, Birkan testified that he considered Ferrari's identity important when he recommended approving this contract. Fourth, the Anghaies' permission to use another researcher's work was separate from the question of whether they made a false statement by including this work in their reports without attribution. And fifth, the issue was whether the Anghaies made false statements in their proposals and reports, not whether invoices were required.

Neither these nor any of the Anghaies' other factual points raise a genuine issue of material fact. This being the case, and because the Anghaies were convicted of conspiracy and fraud for making material misrepresentations as to each of the four contracts at issue, the district court did not err in granting summary judgment on the issue of liability.

### III.

The Anghaies next argue that the district court erred in assessing damages for the full amount of the research contracts. They emphasize that the sentencing court in their criminal case stated that "no actual loss to the victims has been

7

established" and that the Anghaies "provided valuable innovative research" to the government.  We review a district court's award of statutory damages for abuse of discretion.  See Adiel v. Chase Fed. Sav. & Loan Ass'n, 810 F.2d 1051, 1054–55 (11th Cir. 1987).  We review the district court's findings of fact for clear error.  Travelers Property Cas. Co. v. Moore, 763 F.3d 1265, 1268 (11th Cir. 2014).

The Anghaies argue that the damages award conflicts with findings about restitution made in connection with their criminal sentences.  But "[a]n order of restitution is not a judicial determination of damages."  United States v. Barnette, 10 F.3d 1553, 1556 (11th Cir. 1994).  The two remedies serve different purposes and are calculated in different ways.  Restitution is "an equitable remedy" granted "only to the extent that justice between the parties requires."  Id.  (quotation omitted).  "Damages measure the amount of compensable loss a victim has suffered."  Id.  Also, restitution is calculated based on factors such as a defendant's financial resources, financial needs, and earning abilities.  See 18 U.S.C. § 3663(a)(1)(B)(i).  In a damages action the sole question is whether the defendant wrongfully caused the loss.  Even when a sentencing court does not impose restitution because a criminal fraud defendant did not intend or cause any loss, the defendant still may have caused damages as defined by the FCA.

In this case, the district court here did not abuse its discretion in assessing damages for all the money the Anghaies earned through their false claims.  There

8

is "no set formula for determining the government's actual damages" for an FCA claim. United States v. Killough, 848 F.2d 1523, 1532 (11th Cir. 1988). Generally, the measure is "the difference between what the government actually paid on the fraudulent claim and what it would have paid had there been fair, open and competitive bidding." Id. A defendant may also be liable for intangible harm: in Killough we held that kickbacks paid in exchange for government contracts caused a "diminution in the public's confidence in the government," even if the defendants may have won the contracts anyway as the lowest bidder. Id.

The contracts at issue were awarded through the Small Business Innovation Research (SBIR) and Small Business Technology Transfer (STRR) programs. The statute establishing these programs provides that "[i]t is the policy of the Congress that assistance be given to small-business concerns to enable them to undertake and to obtain the benefits of research and development in order to maintain and strengthen the competitive free enterprise system and the national economy." 15 U.S.C. § 638(a). The government does not own the research it subsidizes through these programs or share in the profits from commercial applications. Instead, Congress expected beneficiaries to expand their research through privately funded sources after performing research for the government. 15 U.S.C. § 638(e).

This Court has never identified the precise benefit to government agencies of the SBIR and STTR programs. The district court therefore looked to two out-of-

9

circuit decisions.  The first also involved charges that a company lied when applying for an SBIR grant.  See United States ex rel. Longhi v. United States, 575 F.3d 458, 461–62 (5th Cir. 2009).  The Fifth Circuit explained that the purpose of a research grant is to "award money to eligible deserving small businesses."  Id. at 473.  Because the company's fraud deprived the government of this benefit and the government received no tangible benefit from these contracts, that court affirmed damages based on the full amount of the contracts.  See id.

The district court also looked to United States v. Sci. Applications Int'l Corp., 626 F.3d 1257 (D.C. Cir. 2010), which involved allegations that a company made false statements to the Nuclear Regulatory Commission.  Id. at 1263.  The district court had awarded the government damages in the full amount of the payments made to the company.  Id. at 1264.  The D.C. Circuit held that "the government will sometimes be able to recover the full value of payments made to the defendant, but only where the government proves that it received no value from the product delivered."  Id. at 1279.  Remanding on the damages calculation, it noted that "where the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself, the government can easily establish that it received nothing of value from the defendant and that all payments made are therefore recoverable as damages."  Id.

10

The district court did not abuse its discretion by calculating damages based on the entire amount the government paid to the Anghaies. The evidence shows that the government would not have paid the Anghaies at all but for their fraud. Therefore, the difference between what the government paid and what it would have paid in open, fair, and competitive bidding was the full amount of the contract payments. Although this loss amount must be offset by any benefit conferred to government, the district court did not err in finding that the government received no benefit. The purpose of SBIR and STTR funding is to "assist small-business concerns to obtain the benefits of research and development performed under Government contracts or at Government expense." 15 U.S.C. § 638(a), (b)(2). The Anghaies lied about why they deserved this funding. Their fraud deprived the government of the benefit of funding deserving and eligible research. The government is entitled to damages for this harm.

In any event, the Anghaies do not claim they provided any tangible or calculable benefit. Instead, they claim they owe no damages because the sentencing court said the "value in this case is difficult to quantify, but it does appear that the defendants delivered cutting-edge innovative ideas." Again, findings about restitution do not dictate whether the evidence supports damages for intangible harm. And the statement that the "value in this case is difficult to quantify" actually highlights the intangible nature of any benefit the Anghaies

11

might have conferred.  The sentencing court even recognized that the Anghaies "were not entitled to receive" the funding and that "there is a loss but the amount cannot be determined."  It further specified that this loss was "not a pecuniary loss" but rather a loss of "opportunit[ies] to enter into SBIR and STTR contracts with qualified small businesses."

In light of its findings that the government received no tangible benefit and suffered a clear intangible harm, the district court did not abuse its discretion by imposing damages based on the full amount the government paid the Anghaies.[1]

## IV.

Finally, the Anghaies claim that the district court imposed excessive civil penalties.  The FCA authorizes civil penalties between $5,500 and $11,000 per false claim.[2]  The district court imposed an $11,000 penalty for each of the 21 false claims in the complaint.  The Anghaies argue that this $231,000 total penalty "is 'infinite' times more than the actual loss," which they claim is zero.  They suggest that this disproportionate fine may even violate the Eighth Amendment.  The government responds that its damages were more than $900,000.  We have already explained how the district court calculation reached an acceptable damages

---

[1] That said, we expect the damage award will be lower once the payments identified in the time-barred counts are subtracted on remand.

[2] The FCA provides for penalties of $5,000 to $10,000.  31 U.S.C. § 3729.  These amounts have been adjusted for inflation to $5,500 to $11,000.  See 28 C.F.R. § 85.3(a)(9).

amount. The district court did not abuse its discretion by imposing a statutorily authorized fine that amounts to less than a third of that amount.[3]

## V.

We affirm the district court's judgment as to count 1 and counts 4 through 22. The record from the Anghaies' criminal case supports the district court's holding that that the Anghaies violated the FCA for each of those payments. Once the district court established liability, it did not abuse its discretion by calculating damages based on the total amount paid to the Anghaies for these counts. Because counts 2 and 3 are time-barred, we vacate the judgment as to these counts and remand for a recalculation of damages and penalties consistent with this opinion and the concession by the government.

**AFFIRMED in part, VACATED and REMANDED in part.**

---

[3] Again, we refer to the fines associated with the counts that aren't time-barred.