**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Patricia O. Sperring WALCOTT,**
**Defendant–Appellee.**

No. 91–8381.

United States Court of Appeals,
Eleventh Circuit.

Sept. 11, 1992.

Michael J. Singer, Richard A. Olderman, Civ.Div., Appellate Staff, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Mary Grace Diehl, Joan B. Cravey, Troutman, Sanders, Lockerman & Ashmore, Atlanta, Ga., for defendant-appellee.

BEFORE: COX, Circuit Judge, CLARK *, and WELLFORD **, Senior Circuit Judges.

WELLFORD, Senior Circuit Judge:

This dispute arises from a $500,000 loan from the Small Business Administration ("SBA") to the husband of the defendant, Patricia Walcott. The defendant guaranteed the loan upon which her husband soon defaulted. The defendant, claiming insufficient funds to pay the entire guaranteed debt, settled the SBA's claim with its purported representative for $75,000. Later, the United States sued defendant Walcott, claiming that the settlement agreement was void because SBA did not have the authority to settle the claim. The district court upheld the settlement agreement, concluding that the United States was estopped from denying the validity of the agreement. We REVERSE.

On June 23, 1981, Holland International Food, Inc. ("Holland"), then operated by Richard Sperring ("Sperring"), borrowed $500,000 from a bank in participation with SBA. To assist her husband, Sperring, in qualifying for this SBA loan, the defendant signed as guarantor. Less than a year later, Holland defaulted on the loan. On August 20, 1982, the maturity of the note was accelerated, making the full balance of the note, plus accrued interest, immediately due and payable. In divorce proceedings while default was occurring, Sperring was required to pay the SBA debt. Despite his obligations, Sperring moved to England without repaying the loan.

On July 28, 1988, the United States, on behalf of the SBA, sued the defendant and two other guarantors [1] for the outstanding debt.[2] In April, 1989, the defendant retained an attorney, Mary Grace Diehl ("Diehl"), to represent her. Diehl contacted Michael C. Daniel ("Daniel"), an assist-

ant United States Attorney, regarding a settlement. Diehl then sent the SBA Walcott's financial forms along with a settlement offer of $35,000 cash. Settlement negotiations were thereafter conducted by the SBA, through its loan specialist David Mitchell. The SBA rejected the $35,000 settlement offer and stated: "considering the assets of [the defendant], the [SBA] recovery should be approximately ten (10) percent," or $90,000. A copy of that letter was sent to Daniel. To permit further negotiations, the pending court proceedings were stayed by consent of both Daniel and Diehl.

Walcott then offered to pay to the SBA $50,000 cash plus $40,000 in quarterly payments over a four-year term. The SBA rejected this second offer, and on December 15, 1989, the defendant offered $75,000 cash, asserting that this was the maximum amount that she could borrow.[3] Mitchell recommended acceptance to the SBA Claims Review Committee, which was informed that the Department of Justice concurred in the settlement recommendation. In actuality, the Department of Justice did not concur and was not even aware of the settlement negotiations.

Shortly thereafter, the SBA committee accepted the defendant's offer. Diehl was advised by letter from Mitchell dated February 15, 1990, that her client's offer had been accepted. Diehl then sent a draft of a proposed covenant not to sue to the SBA and to Daniel. Upon Mitchell's advice that the terms of the covenant were acceptable to the SBA, Diehl sent a letter, with a copy to Daniel, and a $75,000 money order to the SBA stating that the payment was "per our settlement agreement." On March 16, Mitchell received the money order and executed the covenant not to sue as a representative of the SBA.

---

* See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** HONORABLE HARRY W. WELLFORD, Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

1. The other two guarantors had each guaranteed $75,000 of the original loan amount, and both discharged their indebtedness.

2. The defendant moved to dismiss for lack of personal jurisdiction, which motion was denied. That motion is not involved in this appeal.

3. The defendant took out a home equity loan for $55,000, borrowed $10,000 from her father, and secured $10,000 from "other sources."

Despite all these negotiations and the payment, Daniel informed Diehl within a few days that the settlement was void. Daniel also informed Diehl that the defendant's check would be refunded, but this did not occur for about four months. Diehl was subsequently informed that the Department of Justice in Washington, D.C., had declined to approve the $75,000 settlement.

In the suit below, the district court held that the government was equitably estopped from denying the validity of the $75,000 settlement. It ordered that the government accept Walcott's second check in that amount. On appeal to this court, the government maintains that the settlement was void without specific Justice Department approval, and that the United States is not properly subject to equitable estoppel.

■ Whether the district court was correct in applying equitable estoppel in this case is a question of law subject to *de novo* review. *See Doe v. Garrett*, 903 F.2d 1455, 1458 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1323 (11th Cir.1989). "[T]he constituent elements of estoppel constitute questions of fact," however, and will be accepted as interpreted by the district court unless its findings were clearly erroneous. *Keefe*, 867 F.2d at 1323.

The district court held that, although the Supreme Court has held that the United States cannot be estopped "on the same terms as any other litigant, [the Court] has clearly recognized the 'interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.'" Opinion p. 7 (quoting *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), and relying also upon *United States v. Vonderau*, 837 F.2d 1540 (11th Cir.1988)). The district court held that the United States in this case was estopped from repudiating the settlement agreement at issue because

Walcott had established the traditional elements of equitable estoppel and had shown that she "changed her position for the worse in reliance upon the Government's conduct." [4] *Id.* In addition, the court found that the government acted in its proprietary as opposed to its sovereign capacity.

The government cites *Vonderau* to the effect that "[t]he Government cannot be estopped by the action of its agent when that agent acts without authority or contrary to law." *Vonderau*, 837 F.2d at 1541 (citing *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. at 3, 92 L.Ed. 10 (1947)); *see also United States v. Killough*, 848 F.2d 1523, 1526 (11th Cir. 1988); *FDIC v. Harrison*, 735 F.2d 408, 410 (11th Cir.1984). Its argument follows that equitable estoppel cannot lie against the United States in this case because the SBA agent clearly acted outside the scope of his authority.

■ In *Vonderau*, 837 F.2d at 1541, this court set out a three-part analysis to determine whether estoppel should apply against the United States government:

(1) the traditional private law elements of estoppel must have been present; (2) the Government must have been acting in its private or proprietary capacity as opposed to its public or sovereign capacity; and (3) *the Government's agent must have been acting within the scope of his or her authority.*

(emphasis added) (citing *FDIC v. Harrison*, 735 F.2d 408, 410 (11th Cir.1984)). In *Vonderau*, the defendant argued that a contractual time limitation for filing suit had run, based on oral representations made by an agency employee. The court held that, because the agent acted outside his authority in waiving the debt of the defendant, estoppel did not lie against the federal government as a matter of law. *Id.* at 1541–1542. The court acknowledged the harshness of its holding, but reasoned that anyone who enters into an agreement with the government " 'takes the risk of having

---

**4.** The district court did not address the defendant's argument that the case should be dismissed because there was "accord and satisfaction." Opinion p. 7 n. 1.

accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.'" *Id.* at 1452 (quoting *Merrill,* 332 U.S. at 384, 68 S.Ct. at 3). *See also Killough,* 848 F.2d at 1526–1527 (holding that the government could not be estopped from bringing suit because the government representative who entered into a "compromise agreement" with the defendant had no authority to do so).

◼ We cannot escape the application of *Vonderau* to the facts of this case. Therefore, if the SBA agent who negotiated the settlement acted outside the scope of his authority, the United States cannot properly be held to be estopped from repudiating that agent's actions and the $75,000 settlement.

The United States asserts that neither the SBA agent nor the assistant United States Attorney had the requisite authority to settle the claim with Walcott or her guaranty, because the exclusive authority to conduct and control litigation involving the United States is vested ultimately in the Attorney General. The government relies on two statutes to support its position:

> Except as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party ... is reserved to officers of the Department of Justice, under the direction of the Attorney General.

28 U.S.C. § 516.

> Except as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States, an agency, or officer thereof is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.

28 U.S.C. § 519.

Under these two statutes, "the Attorney General is the chief legal officer of the United States and absent express congressional directive to the contrary he is vested with plenary power over all litigation to which the United States or one of its agencies is a party." *FDIC v. Irwin,* 727 F.Supp. 1073, 1074 (N.D.Tex.1989), *aff'd,* 916 F.2d 1051 (5th Cir.1990). *See ICC v. Southern Railway Co.,* 543 F.2d 534, 535–536 (5th Cir.1976); *In re Subpoena of Persico,* 522 F.2d 41, 54 (2d Cir.1975); *see also Morrison v. U.S. Department of Labor,* 713 F.Supp. 664, 669 (S.D.N.Y.1989) (the Department of Justice "is vested by law with the *exclusive* authority" to conduct or supervise litigation on behalf of the United States (emphasis added)). This statutory power is broad and plenary "so that control of all government litigation, prosecution and defense, may be centralized and coordinated." *Morrison,* 713 F.Supp. at 669.

Despite this statutory authority, the district court cited *S & E Contractors, Inc. v. United States,* 406 U.S. 1, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972), for the proposition that equitably the Justice Department and the Attorney General should not have repudiated the settlement agreement worked out by SBA. "Where the responsibility for rendering a decision is vested in a coordinate branch of Government, the duty of the Department of Justice is to implement that decision and not to repudiate it." *Id.* at 13, 92 S.Ct. at 1418.

The quoted language from *S & E Contractors,* however, was made in deciding whether the Department of Justice had the right to appeal from an administrative decision of the Atomic Energy Commission; not whether a government agent had the authority to render a decision. *See S & E Contractors,* 406 U.S. at 12–13, 92 S.Ct. at 1418. We deem *S & E Contractors* to be inapplicable to the issue in the case at bar—whether the SBA agent and the assistant United States Attorney had the authority to settle litigation involving this SBA loan.

In *Killough,* an assistant United States Attorney agreed that the defendants would not be subject to any "further action" if they pleaded guilty to a fraud conspiracy. *Killough,* 848 F.2d at 1526. The court held that the attorney did not have the authority to enter into such an agreement, and that the United States, therefore, could not be estopped from bringing the action based

upon a federal regulation. *Killough* implies that the Assistant United States Attorney in that case did not have the authority to settle the claim because the Attorney General exclusively possessed such authority.

According to 28 U.S.C. §§ 516 and 519, and under the authorities cited, we conclude that the Attorney General was vested with the exclusive authority to settle the suit at bar. *See also Irwin,* 727 F.Supp. at 1074–1075, and *Morrison,* 713 F.Supp. at 669. Although Congress could have "otherwise authorized" the SBA to conduct its own litigation, neither the court nor the defendant has suggested that such congressional authorization exists. *See Irwin,* 727 F.Supp. at 1074–1075 (finding that congress has "otherwise authorized" the FDIC to conduct its own litigation). The defendant does not argue that the SBA or the Assistant United States Attorney had the requisite authority; she essentially relies instead on the argument that the defendant "reasonably concluded that the Government's agent was acting within the scope of his authority...." In any event, the defendant's perception about the authority of Mitchell and Daniel do not support a legal argument that the government agents possessed the actual authority to effectuate the settlement. The ultimate issue essentially is one of law, not one of fact, or even one of equity. There is no legal basis, then, to indicate that the SBA had authority to execute the settlement agreement with the defendant, absent approval of the Attorney General. Nor is there any legal basis indicating Daniel's authority so to settle.

The principles expressed are well summarized in a decision which has binding precedential value in this circuit, *Dresser Industries, Inc. v. United States,* 596 F.2d 1231 (5th Cir.1979). *Dresser Industries* involved the power of the SEC in a formal inquiry resulting in a civil action by Dresser seeking to enforce a claimed contract with the SEC which would "purport to bind the Department of Justice not to investigate Dresser, not to issue Grand Jury subpoenas, and not to assess civil or criminal penalties...." The court held such a contract not to be enforceable because the SEC lacked such authority, stating:

> It is well established that the federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947)....
>
>       .       .       .       .       .
>
> In general, the conduct of litigation in which the United States is a party is reserved to officers of the Department of Justice, under the direction of the Attorney General. 28 U.S.C. § 516.

*Dresser Industries,* 596 F.2d at 1236, 1237.

■ Further, the Supreme Court has recently held that equitable estoppel cannot apply against the United States in a suit to recover "public funds." *See Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). In *Richmond,* the respondent received erroneous information from a federal employee regarding the statutory limit on earnings in order to receive a disability annuity. As a result, he earned too much money within a six-month period, and was disallowed the disability benefits for that period of time. He appealed the disallowance, claiming that the United States was estopped from enforcing the statutory limit because of the false representations made to him. The Court endorsed the "strict approach to estoppel [in] claims involving public funds." *Id.* at 426, 110 S.Ct. at 2472. Denial of equitable estoppel claims in such cases is "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good, and not according to the individual favor of Government agents or the individual pleas of litigants." *Id.* at 428, 110 S.Ct. at 2473.

■ Here, the defendant's loan was made out of a congressionally appropriated fund, and the funds that the government seeks to recover are "public funds." As an alternative basis for our holding, we find that under the rule in *Richmond,* equitable

estoppel cannot lie against the government in this case.

We are sympathetic to defendant's contentions in this case under the circumstances. We agree with the district court that the government handled the case and dealt with Walcott in a "shabby" fashion.[5] We find no alternative, however, but to enforce the law and the explicit statutes we have cited and find that the district court erred in applying equitable estoppel against the United States. The settlement must be set aside. In the ultimate determination of defendant's liability, however, she is to be given a credit adjustment for interest during the period that the government had the use of the $75,000 tendered by Walcott, and utilized by the government. The United States must also refund the payment made promptly unless the parties otherwise agree.

We REVERSE the decision of the district court and REMAND for further proceedings consistent with this opinion.[6]

---

5. At the same time, we take note that Walcott herself was earning $120,000 annually at the time of the default.

6. In light of our decision, we hereby deny the defendant's motion to dismiss this appeal as moot.