THOMAS, J.
 

 The United States appeals three final judgments entered by the trial court: 1) declaring a mortgage and promissory notes held by the United States to be null and void for lack of consideration; 2) denying foreclosure on the mortgaged property under the court’s equitable powers; and 3) awarding Appellees Charles Morrison and Shirley Morrison $100,000 in damages on a counterclaim alleging the United States violated section 559.72, Florida Statutes (2001), by reporting derogatory credit information and filing suit on the debt. The trial court retained jurisdiction to consider Appellees’ additional counterclaim for slander of title on the mortgaged property.
 

 We hold that Mrs. Morrison received consideration for her agreement to mortgage the property, and that no equity justified the lower court’s ruling declaring the mortgage null and void. We further hold that Appellees failed to establish that the mortgage was extinguished by an accord and satisfaction, because no federal employee had the authority to discharge the mortgage debt. Finally, we hold that the United States did not waive sovereign immunity regarding the counterclaims. We reverse and remand with directions to the trial court to declare the mortgage valid, grant the foreclosure, vacate the jury verdict on the counterclaim, enter judgment for the United States, and dismiss with prejudice the remaining counterclaim for slander of title.
 

 Facts and Procedural History
 

 In 1995, the United States Department of Agriculture, Farm Services Agency (Appellant), loaned Charles and Shirley Morrison (Appellees) more than $180,000. The loan, secured by promissory notes and the execution of a mortgage on real property owned by Appellees, was to be used by Appellees to start a cattle ranching business. The notes and mortgage were signed by both Charles and Shirley Morrison.
 

 In 2003, Appellant filed suit against Ap-pellees to foreclose upon the mortgaged property and alleged they had failed to make any payments on the loan since 1997. Appellees answered the foreclosure action and filed numerous affirmative defenses. Appellees acknowledged the mortgage, but asserted: 1) the loan violated the Equal Credit Opportunity Act, 15 United States Code section 1601, by requiring Mrs. Morrison to execute loan documents because of
 
 *97
 
 her marital status; 2) the loan documents were made without adequate consideration; and 8) Appellant’s cause of action was barred by the statute of limitations.
 

 In addition, Appellees filed an amended counterclaim asserting: 1) the mortgage should be rescinded and damages awarded due to violation of the Equal Credit Opportunity Act; 2) Appellant slandered the mortgaged property’s title by recording and continuing to report a second mortgage; and 3) Appellees’ personal debt had been discharged through bankruptcy, yet Appellant continued to wrongfully report an outstanding personal debt obligation, in violation of the Florida Consumer Collection Practices Act.
 

 In its answer to the counterclaim, Appellant argued: 1) Appellees were not entitled to equitable relief under the unclean hands doctrine and the doctrine of laches; 2) the counterclaim was barred by estoppel because Appellees sought and obtained funds which they represented they would repay; 3) any alleged discriminatory action occurred in 1995 and was barred by the statute of limitations; and 4) the counterclaims were barred by the statute of limitations.
 

 Appellant twice moved for summary judgment, asserting: 1) Appellees’ counterclaims were barred by the applicable statute of limitations; 2) Appellees’ counterclaims failed on the merits as a matter of law, because damages for slander of title are barred by sovereign immunity; and 3) the Federal Tort Claims Act is the exclusive remedy against the United States for tortious actions. In support of its motions, Appellant attached the affidavit of Michael Graham, the Farm Sendee Agency’s Farm Loan Chief for Florida. Mr. Graham affirmed that Appellees were told in advance that Mrs. Morrison’s signature was required on the loan documents, because her income was needed to show a positive cash flow. The affidavit further stated that the loan would not have been approved if Appellees could not demonstrate a positive cash flow.
 

 At a pre-trial hearing, the trial court stated that it had “some concerns” with the slander of title claim and was going to “take the motion for summary judgment as to the slander issue under advisement and remove it and sever it from the matters that are to be heard today.” A trial was held, and an advisory jury found that Appellant did not violate the Equal Credit Opportunity Act in approving Appellees’ loan; however, the jury found that Mrs. Morrison did not receive adequate consideration to support the mortgage. Regarding Appellees’ contention that an accord and satisfaction was reached, the jury found that Appellant agreed that Mr. Morrison could liquidate his cattle and equipment to satisfy the debt. Concerning Ap-pellees’ counterclaim, the jury found that Appellant violated the Florida Consumer Collection Practices Act by reporting derogatory credit information, filing suit to collect its debt after the statute of limitations period ran, and continuing to collect the debt after it was discharged in bankruptcy. The jury determined Appellees suffered $100,000 in compensatory damages.
 

 The trial court adopted the jury’s findings and found the mortgage null and void for lack of consideration, and declared the promissory notes paid in full and satisfied due to the accord and satisfaction. The trial court determined consideration for the mortgage was insufficient as it related to Mrs. Morrison, because Mr. Morrison was the sole loan applicant, and the mortgage on the homestead property did not arise until sometime before the loan closing. The trial court further found that the mortgage on the homestead property was signed solely by Mr. Morrison, because
 
 *98
 
 Mrs. Morrison’s signature was without adequate consideration. The trial court found that without Mrs. Morrison’s signature, the mortgage violated Florida’s homestead protection laws. Citing Appellant’s six-year delay in seeking foreclosure, the accord and satisfaction, and the fact that none of the loan proceeds were used to purchase or improve the home, the trial court “exercisfed] its equitable powers” to deny foreclosure. Lastly, the trial court entered final judgment pursuant to the jury verdict’s award of $100,000 to Appel-lees.
 

 Appellant filed a motion for new trial, which the trial court denied. After Appellant appealed the final judgment, the circuit court granted Appellees’ motion to amend their counterclaim. To stay further action in the trial court, Appellant now petitions for a writ of prohibition, arguing that the circuit court lacks jurisdiction and that the counterclaim is barred by the doctrine of sovereign immunity.
 

 Analysis
 

 I. The Mortgage and Foreclosure Action Validity of the Mortgage
 

 The Florida Supreme Court has clearly stated that “[s]afeguarding the validity of [mortgage] contracts, and assuring the light of enforcement thereof, is an obligation of the courts which has constitutional dimensions.”
 
 David v. Sun Fed. Sav. & Loan Ass’n,
 
 461 So.2d 93, 95 (Fla.1984). A lender may be estopped from foreclosing on an accelerated basis, however, where the borrower establishes that equity demands such relief.
 
 See City First Mortgage Corp. v. Barton,
 
 988 So.2d 82, 85-86 (Fla. 4th DCA 2008);
 
 Pelle v. Glantz,
 
 349 So.2d 732 (Fla. 3d DCA 1977). In
 
 David,
 
 the supreme court recognized that “[although providing equitable relief in a proper case is discretionary with the trial judge, were that discretion not guided by fixed principles, the degree of uncertainty injected into contractual relations would be intolerable.” 461 So.2d at 95. Importantly, the court noted that equitable relief from foreclosure exists only in limited situations:
 

 Foreclosure on an accelerated basis may be denied when the right to accelerate has been waived or the mortgagee es-topped to assert it, because of conduct of the mortgagee from which the mortgagor (or owner holding subject to a mortgage) reasonably could assume that the mortgagee, for or upon a certain default, would not elect to declare the full mortgage indebtedness to be due and payable or foreclose therefore; or where the mortgagee failed to perform some duty upon which the exercise of his right to accelerate was conditioned; or where the mortgagor tenders payment of defaulted items, after the default but before notice of the mortgagee’s election to accelerate has been given (by actual notice or by filing suit to foreclose for the full amount of the mortgage indebtedness); or where there was intent to make timely payment, and it was attempted, or steps taken to accomplish it, but nevertheless the payment was not made due to a misunderstanding or excusable neglect, coupled with some conduct of the mortgagee which in a measure contributed to the failure to pay when due or within the grace period.
 

 Id.
 
 at 96 (quoting
 
 Campbell v. Werner,
 
 232 So.2d 252, 257 (Fla. 3d DCA 1970)). None of the “equitable factors” relied upon by the trial court fall within the limited exceptions quoted above. Thus, we hold that the trial court’s order denying foreclosure and invalidating the mortgage based upon the court’s equitable jurisdiction must be reversed. The trial court had no basis in equity to deny the foreclosure here.
 

 
 *99
 
 As a matter of law, Mrs. Morrison received adequate consideration for the mortgage, based on her agreement to the mortgage and her access to the mortgage funds. A mortgage is not valid and binding unless founded upon a bona fide and sufficient consideration.
 
 See Kremser v. Tonokaboni,
 
 356 So.2d 1331, 1332 (Fla. 3d DCA 1978). Here, Appellees received loans of approximately $180,000 in exchange for executing the mortgage on their property. Appellant disbursed the loan proceeds to Appellees, and Charles and Shirley Morrison acknowledged the loans by signing promissory notes. The mortgage itself indicates that Appellees, as borrowers, are “justly indebted to government as evidenced by one or more promissory notes.”
 

 Appellees’ argument, that Mrs. Morrison did not receive consideration for her signature because she did not actually receive or use any of the loan proceeds, is not persuasive. The Fourth District’s decision in
 
 F.D.I.C. v. Diamond C Nurseries, Inc.,
 
 629 So.2d 157 (Fla. 4th DCA 1993), is analogous and instructive on this issue. There, Thomas Waldron, Diamond C’s agent, agreed to mortgage as collateral a 53-acre nursery owned by Diamond C to secure bank loans made to business associates or friends.
 
 Id.
 
 at 158. The trial comí found that Diamond C had not received adequate consideration, but the Fourth District reversed, explaining, “[e]ven if Diamond C had received nothing, the consideration flowing to [Waldron’s friends], the obligors whom Diamond C was putting up its collateral to help, was consideration sufficient to support the mortgage.”
 
 Id.
 
 Likewise, even though Mrs. Morrison may not have received any disbursements from the monies loaned to her husband, the consideration flowing to her was sufficient to support the mortgage. The trial court erred in denying foreclosure on the ground that Mrs. Morrison did not receive consideration, as there was a debt or obligation in relation to the mortgage.
 
 [1]
 

 Appellees’ reliance on
 
 Kremser v. Tonokaboni,
 
 356 So.2d 1331 (Fla. 3d DCA 1978), is misplaced, because that case is readily distinguishable. In
 
 Kremser,
 
 To-nokaboni executed a note and mortgage on her home in favor of Stewart.
 
 Id.
 
 at 1332. Stewart then assigned the mortgage to Kremser.
 
 Id.
 
 Stewart failed to make payments, and Kremser sought foreclosure.
 
 Id.
 
 The trial court dismissed the foreclosure action, and the Third District affirmed, because the mortgage lacked consideration.
 
 Id.
 
 There, however, the issue was only whether consideration existed between Stewart and Tonokaboni.
 
 Id.
 
 The record clearly established no such consideration existed, because Tonokaboni was unaware of the kind of instrument she had signed and did not know its legal effect.
 
 Id.
 
 The Third District noted that “the mortgagee (Stewart)
 
 never suffered a detriment of any kind
 
 in that no funds were ever advanced to [Tonokaboni], as mortgagor.”
 
 Id.
 
 at 1332-33 (emphasis added). The court went on to note that
 
 *100
 
 had Tonokaboni directly mortgaged the property to Kremser in Stewart’s favor, which is more akin to the situation
 
 sub judice,
 
 adequate consideration would have existed.
 
 Id.
 

 The Defense of Accord and Satisfaction
 

 There can be no accord and satisfaction if Appellant’s agent had no actual authority to accept settlement of the debt.
 
 See Fed. Crop Ins. Corp. v. Merrill,
 
 332 U.S. 380, 384, 68 S.Ct. 1, 92 L.Ed. 10 (1947);
 
 see also U.S. v. Walcott,
 
 972 F.2d 323, 327 (11th Cir.1992) (explaining that federal government not bound by agreement entered by its agent unless agent is acting within limits of actual authority). The existence of an agency relationship is usually a question of fact resolved by the fact-finder.
 
 Fernandez v. Fla. Nat’l College, Inc.,
 
 925 So.2d 1096, 1100 (Fla. 3d DCA 2006). However, when a party bearing the burden of proof fails to produce any supportive evidence, or when the evidence presented by both parties is so unequivocal that reasonable persons could reach but one conclusion, a question that is ordinarily one of fact becomes a question of law to be determined by the court.
 
 Id.
 
 (quoting
 
 Gillet v. Watchtower Bible & Tract Soc’y of Pennsylvania, Inc.,
 
 913 So.2d 618 (Fla. 3d DCA 2005)).
 

 The Eleventh Circuit’s opinion in
 
 Wal-cott
 
 discussing federal agency law is particularly persuasive. There, Walcott signed as guarantor on her husband’s $500,000 Small Business Administration loan.
 
 Id.
 
 at 324. When her husband defaulted on the loan and fled the country, the government sued Walcott as guarantor.
 
 Id.
 
 Walcott’s attorney negotiated a settlement with the Small Business Administration’s loan specialist, who recommended acceptance of the offer to the Agency’s claims review committee, which was informed that the Department of Justice concurred in the recommendation.
 
 Id.
 
 In actuality, the Department of Justice did not concur and was unaware of the negotiations.
 
 Id.
 

 Walcott, having been advised that her offer had been accepted, sent a money order in the agreed upon amount.
 
 Id.
 
 The SBA loan specialist received the money order and, as its representative, executed a covenant not to sue.
 
 Id.
 
 Several days later, Walcott was informed that the Department of Justice declined the settlement, it was void, and her money would be refunded.
 
 Id.
 
 at 325. The trial court held the government was equitably estopped from denying the validity of the settlement.
 
 Id.
 

 On appeal, the Eleventh Circuit noted that “anyone who enters into an agreement with the government ‘takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.’ ”
 
 Id.
 
 at 325-26 (quoting
 
 Merrill,
 
 332 U.S. at 384, 68 S.Ct. 1). Only the Attorney General was vested with authority to settle the action under the law applicable to that case.
 
 Id.
 
 at 327 (noting, in general, conduct of litigation to which United States is a party is reserved to officers of the Department of Justice under 28 U.S.C. § 516). The court alternatively held that equitable estoppel cannot apply against the United States in a suit to recover public funds.
 
 Id.
 
 at 327. Although sympathetic to Walcott’s predicament, the court reversed and remanded the trial court’s decision because the settlement was not approved by the proper authority, and equitable estoppel was not a valid defense.
 
 Id.
 
 at 326-28.
 

 We think the case law interpreting federal agency relationships is highly relevant in state cases where the defense of accord and satisfaction is raised against a federal agency. Here, the accord and sat
 
 *101
 
 isfaction defense required proof of two elements: First, that the parties mutually intended to settle an existing dispute by entering into a superseding agreement; and, second, that there was actual performance with satisfaction of the new agreement discharging Appellees’ prior obligation.
 
 Rudick v. Rudick,
 
 403 So.2d 1091 (Fla. 3d DCA 1981).
 

 Appellees introduced no evidence to establish that Appellant’s county supervisor Rogers had actual authority to compromise or discharge their obligations. Appellees argue that Mr. Morrison relied on Rogers’ authority to “write down” the debt because Rogers had made many binding decisions throughout the loan process, received loan payments with authority, and deposited them into Appellant’s account. Nonetheless, authority to accept payments does not include, by implication, authority to compromise or discharge the underlying obligation, as there is no implied agency authority when dealing with the United States.
 
 See Merrill,
 
 332 U.S. at 383 n. 1, 68 S.Ct. 1 (“the rules of law whereby private insurance companies are rendered liable for the acts of their agents are not bodily applicable to a Government agency ... unless Congress has so provided.”). Where the federal employee cannot bind the United States, there can be no accord and satisfaction between the United States and another party.
 

 Even if we were to conclude accord and satisfaction was a valid defense here, no competent, substantial evidence in the record supports the trial court’s finding that such an agreement was reached. Appel-lees knew the county supervisor did not have authority to make loans, because loans had to be approved by a higher office in Gainesville. Appellees were aware of that fact because the Gainesville office imposed additional conditions during the initial loan approval process. Furthermore, Appellees twice went before the county committee asking that it
 
 recommend
 
 that the loan be written off. Thus, Appellees had no reason to believe the county supervisor had sole authority to write down or write off the loans.
 

 In sum, we reverse with directions to enter judgment in favor of Appellant, declare the mortgage valid and enforceable, and grant foreclosure. We find no equitable basis to find the mortgage null and void for lack of consideration on behalf of Mrs. Morrison, and there was no accord and satisfaction established by Appellees.
 

 II. Counterclaim and Damages Award
 

 Appellees’ amended counterclaim alleged the personal debt against them was discharged in bankruptcy, yet Appellant continued to report an outstanding personal debt obligation, in violation of the Florida Consumer Collection Practices Act. The trial court found that Appellant waived the defense of sovereign immunity from a damages claim. This decision was based in part on Appellees’ argument that Appellant waived sovereign immunity through its decision to allow this case to proceed in state court rather than seek removal to federal court. We disagree.
 

 Contrary to the trial court’s finding, Appellant properly raised the sovereign immunity defense in its motion for summary judgment. We further note that under federal law, the sovereign immunity of the federal government may not be waived by the failure to plead. “If the contrary were true, it would subject the government to suit in any court in the discretion of its responsible officers. This is not permissible.”
 
 U.S. v. U.S. Fidelity & Guar. Co.,
 
 309 U.S. 506, 513, 60 S.Ct. 653, 84 L.Ed. 894 (1940). There must be a waiver of such immunity for the claim to be cognizable, and we find no such waiver here.
 
 See FDIC v. Meyer,
 
 510 U.S. 471,
 
 *102
 
 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (explaining “[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit”).
 

 Where a suit is filed by the United States, the opposing party may, in response to the suit, file a cross action to reduce the amount owed. Such counter-suits are only permissible “to the extent of defeating the government’s claim but not to the extent of a judgment against the government ... exceeding the amount of the government’s claims.”
 
 U.S. v. Timmons,
 
 672 F.2d 1373, 1379-80 (11th Cir.1982) (quoting
 
 Frederick v. U.S.,
 
 386 F.2d 481, 488 (5th Cir.1967)). Thus, even if Appellees met the requirements of a re-coupment suit, the trial court had no authority to award damages.
 
 Id.
 

 Recoupment suits are permissible only when the counterclaim “arisfes] out of the same transaction or occurrence which is the subject matter of the government’s suit.”
 
 Timmons
 
 at 1379 (quoting
 
 Frederick,
 
 386 F.2d at 488). Because Appellees obtained a bankruptcy discharge, Appellant pursued only an
 
 in rem
 
 foreclosure action against the real property, which could not provide the foundation for a counterclaim based on an action for money damages. Additionally, Appellees asserted in their counterclaim that the agency wrongfully reported derogatory credit information, in violation of section 559.72(5), Florida Statutes, which is recognized as a tort.
 
 See Reeves v. Ace Cash Express, Inc.,
 
 937 So.2d 1136, 1138 (Fla. 2d DCA 2006). Thus, this tort action was not cognizable against Appellant even if we were to find that sovereign immunity was waived, because this alleged tort does not arise from the same transaction as the mortgage or the foreclosure suit. Accordingly, we reverse the order below entering judgment for Appellees on the counterclaim and vacate the award for damages.
 

 Conclusion
 

 By our holding today, we necessarily find that the remaining counterclaim cannot state a cause of action. Thus, we reverse all aspects of the final order on appeal and remand with directions to enter judgment for Appellant. We further grant the petition for writ of prohibition and direct the trial court to dismiss the remaining counterclaim with prejudice, as Appellees cannot state a claim against the United States.
 

 REVERSED and REMANDED; PETITION GRANTED.
 

 KAHN, J., and MORRIS, STAN R., Associate Judge, concur.
 

 [1]
 

 . "An obligation whose performance is secured by a mortgage may be that of the mortgagor or of some other person.” Restatement (Third) of Property: Mortgages § 1.3 (1997). Further, "[a] mortgage securing the obligation of a person other than the mortgagor is valid, whether or not the mortgagor receives an identifiable benefit in return."
 
 Id.
 
 at § 1.3 cmt.a. The following illustration is directly on point:
 

 H and W are married. H wishes to borrow money to start a business, and arranges a loan from Bank. H alone executes a promissory note to Bank, but both H and W execute a mortgage on their jointly owned house to secure the note. The mortgage on the house is enforceable against the interests of both H and W, notwithstanding that W receives no benefit from the loan.
 

 Id.
 
 at illus. 1.